IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
May 2000 Session

## STATE OF TENNESSEE v. JESSE ROSS TOLBERT

**Direct Appeal from the Criminal Court for Roane County**
**No. 11768     E. Eugene Eblen, Judge**

---

**No. E1999-02326-CCA-R3-CD**
**August 18, 2000**

---

Defendant appeals as of right from his conviction of aggravated assault. At trial the trial judge did not let defense counsel question the sole prosecution witness about the witness' guilty plea to extortion and subsequent judicial diversion. The court did allow questioning regarding the facts underlying the witness' prosecution. Defendant now alleges that this evidentiary ruling violated his rights under the confrontation clauses of the United States and Tennessee Constitutions. We hold that the trial court erred. Under Tennessee Rule of Evidence 608 defense counsel should have been allowed to question the witness regarding the guilty plea and judicial diversion. However, we conclude that the error is harmless beyond a reasonable doubt. We thus affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed.**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

Joe H. Walker, District Public Defender; Alfred Hathcock, Assistant Public Defender; and Roland Cowden, Assistant Public Defender, Harriman, Tennessee, for the appellant, Jesse Ross Tolbert.

Paul G. Summers, Attorney General and Reporter; Clinton J. Morgan, Assistant Attorney General; J. Scott McCluen, District Attorney General; and Frank Harvey, Assistant District Attorney General; for the appellee, State of Tennessee.

### OPINION

Defendant Jesse Ross Tolbert was convicted of aggravated assault by a Roane County jury and sentenced to three years incarceration in the Department of Correction. In this appeal Defendant raises one issue regarding his constitutional confrontation rights. During cross-examination of the victim the trial court did not allow defense counsel to discuss the victim's guilty plea to extortion because the victim was granted judicial diversion. The trial court did allow defense counsel to

explore the factual circumstances that gave rise to the victim's prosecution. Defendant now argues that this ruling by the trial court violated Defendant's confrontation rights, and asks that we reverse his conviction. After a careful review of the record and applicable law we conclude that the trial court erred. However, we conclude that the error is harmless beyond a reasonable doubt, and thus affirm the judgment of the trial court.

## I. Facts

On August 9, 1996 Defendant Tolbert went to the home of his ex-wife, Candace Eskridge, to get his son for a parental visit. One block from the house he encountered his ex-wife's husband, Marshall Eskridge, and Defendant's son, who were out riding bicycles. At trial Eskridge testified that Defendant pulled up in a van with two other persons, exited the van, and informed Eskridge that Defendant was there to get his son. Eskridge asked Defendant to come to the house, so Eskridge could confirm that Defendant had Candace's permission to take the boy. Defendant then yelled obscenities at Eskridge and threatened him. Eskridge said that he could smell alcohol on Defendant's breath, and that Defendant's eyes were bloodshot. Eskridge placed his body between Defendant and Defendant's son, and Defendant again threatened Eskridge.

Eskridge placed the boy on one of the bicycles, climbed on the same bike, and rode back to the house. Defendant followed in the van. At the house Eskridge took the boy inside, and when doing so he observed Defendant yelling and exiting the van with a shotgun. While Defendant stood at the front of the house and screamed for Candace Eskridge to come outside, Eskridge proceeded to retrieve a nine millimeter automatic pistol from inside the house. After he collected the weapon he went back outside the house because Candace Eskridge had responded to Defendant's yelling and had gone out to talk to Defendant. By the time that Eskridge exited the house Defendant was back in the van, sitting on the passenger side. Defendant pointed the shotgun at Eskridge, and Eskridge pointed the pistol at Defendant. No words were exchanged, and after a moment the van drove off with Defendant in it.

At trial the State's only proof was the testimony of Marshall Eskridge, and Defendant presented no proof. Defendant sought to undermine Eskridge's credibility by delving into the circumstances regarding Eskridge's resignation from the Knoxville Police Department in March of 1996. Eskridge was caught in an FBI sting operation when he arrested a man for whom no warrant was outstanding, and offered to "fix" the warrant for a cash sum. Eskridge pled guilty to one count of extortion, and received judicial diversion. Eskridge testified that as a result he resigned from the Knoxville Police Department; the presentence report prepared for his guilty plea hearing states that he was fired.

The trial court ruled pre-trial that defense counsel could explore the factual circumstances underlying Eskridge's guilty plea, but that defense counsel could not discuss any aspect of the legal proceedings against Eskridge, including the guilty plea and judicial diversion. The trial court did not give any reasons for this ruling in the record. Defense counsel managed a furious attack on the victim's credibility with questions regarding the circumstances of the victim's crime.

## II. Analysis

Defendant asserts that the trial court erred when it did not allow an inquiry, on cross examination, regarding the victim's guilty plea and judicial diversion status, and that in so doing the trial court violated Defendant's right to effectively cross examine his accuser. Defendant argues that defense counsel should have been allowed to question the victim regarding the plea and judicial diversion. Defendant also argues that defense counsel should have been permitted to admit the guilty plea into evidence if Defendant denied the existence of the plea. We agree that the trial court erred when it did not allow questioning of the victim about the plea and diversion. Tennessee Rule of Evidence 608 controls this issue, and the trial court erred when it did not follow the procedure set forth in the rule. We do not think that judicial diversion is a "conviction" within the meaning of Rule 609, however, and thus any extrinsic evidence of Defendant's plea and diversion would not have been admissible had Defendant denied the existence of the plea. Accordingly, when the trial court's error is placed in the context of the entire trial, the error is harmless beyond a reasonable doubt, and therefore Defendant is not entitled to relief.

The Sixth Amendment to the United States Constitution provides that a criminal defendant "shall enjoy the right . . . . to be confronted with the witnesses against him." U.S. Const. amend. IV. Likewise, Tennessee's constitution states that "the accused hath the right . . . . to meet the witnesses face to face." Tenn. Const. art. I., § 9. These so called "confrontation" clauses have been interpreted to give a defendant the right to physically face and effectively cross-examine the government's witnesses. State v. Howard Brown, No. E1995-00017-SC-R11-CD, 2000 WL 49153, at * 3, Knox County (Tenn. 2000) pet. for cert. filed, 68 U.S.L.W. 3998; State v. Belser, 945 S.W.2d 776, 784 (Tenn. Crim. App. 1996) (quoting Delaware v. Fensterer, 474 U.S. 15, 20 (1985)).

The right to an effective cross-examination is not unbridled. This right is part of a defendant's right to present a defense, and generally an accused "does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." Montana v. Egelhoff, 518 U.S. 37, 42 (1996). The right to present relevant evidence may bow to accommodate other legitimate interests in the criminal trial process. Michigan v. Lucas, 500 U.S. 145, 149 (1991) (quoting Rock v. Arkansas, 483 U.S. 44, 55 (1987). Defendant's brief implicitly acknowledges these limitations; Defendant argues that the trial court erred only because the evidence regarding the victim's guilty plea and judicial diversion is competent evidence under the Tennessee Rules of Evidence.

We agree with Defendant's assertion that an inquiry regarding the victim's guilty plea and judicial diversion should have been allowed on cross examination. Defendant argues that this result is mandated by Tennessee Rule of Evidence 609, but we think that the issue is controlled by Rule 608. Rule 609 governs impeachment of a witness when a witness has been convicted of crime punishable by death or one year or more in prison, or a crime involving dishonesty or false statement. See Tenn. R. Evid. 609(2). The rule sets forth guidelines that provide when the witness may be asked about the conviction (on cross-examination), and how extrinsic evidence may be admitted to

prove that the witness has been so convicted if the witness denies the conviction under oath. Id. 609(1).

Here, however, the victim was not convicted of any crime. The victim did plead guilty to extortion, but was granted judicial diversion. When judicial diversion is granted a judgment of conviction is not entered in the record, and all proceedings against the defendant are stayed. See Tenn. Code Ann. § 40-35-313(a)(1)(A) (1999). If diversion is completed successfully all official records regarding the prosecution are expunged from the Defendant's criminal record. Id. § 313(b). The effect is "to restore the person, in the contemplation of the law, to the status the person occupied before such arrest or indictment or information." Id. "Such discharge or dismissal shall not be deemed a conviction for purposes of disqualifications or disabilities imposed by law upon conviction of a crime or for any other purpose, except as provided in subsection (b)." Id. § 313(a)(2). Although subsection (b) does discuss the admissibility of judicial diversion records, it limits admissibility to (1) non-public records kept by the trial court, that are (2) presented in civil trials where the defendant is a civil plaintiff, and (3) the subject matter of the suit is the same matter as the original criminal prosecution. Id. §313(b). Notably, the statute omits any reference to the general admission of judicial diversion records for impeachment purposes under Rule 609.

Given the language of the statute we think that when a defendant is granted judicial diversion there is no conviction within the meaning of Rule 609, and thus the rule does not apply when counsel seeks to impeach a witness with a criminal prosecution that has concluded in judicial diversion. See, e.g., State v. Schindler, 986 S.W.2d 209, 211 (Tenn. 1999) (holding in part that successful completion of judicial diversion does not bar evidence of the underlying criminal act as a prior bad act); State v. Dishman, 915 S.W.2d 458, 463 (Tenn. Crim. App. 1995) (suggesting that there is no conviction within the meaning of Rule 609 when pretrial diversion is granted). Here, this means that any extrinsic evidence of the victim's guilty plea and judicial diversion is inadmissible.

We think that the evidence of the victim's guilty plea and judicial diversion is governed by Tennessee Rule of Evidence 608(b), which states in part:

> (b) Specific Instances of Conduct. – Specific instances of conduct of a witness for the purpose of attacking or supporting the witness's credibility, other than convictions of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, if probative of truthfulness or untruthfulness and under the following conditions, be inquired into on cross-examination of the witness concerning the witness's character for truthfulness or untruthfulness or concerning the character for truthfulness or untruthfulness of another witness as to which the character witness being cross-examined has testified. The conditions which must be satisfied before allowing inquiry on cross-examination about such conduct probative solely of truthfulness or untruthfulness are:

-4-

(1) The court upon request must hold a hearing outside the jury's presence and must determine that the alleged conduct has probative value and that a reasonable factual basis exists for the inquiry;

Under this rule a witness who has been granted judicial diversion may be properly questioned, for impeachment purposes, about the criminal conduct that lead to prosecution, as well as the subsequent prosecution and judicial diversion. See Schindler, 986 S.W.2d at 211. See also Dishman, 915 S.W.2d at 463 (questioning of victim regarding burglary prosecution proper under Rule 608 even though pre-trial diversion was granted and completed); State v. Williams, 645 S.W.2d 258 (Tenn. Crim. App. 1982) (under Rule 608 trial court should have allowed questioning of witness regarding larceny prosecution, even though pre-trial diversion was granted).

Here, defense counsel requested a pre-trial hearing to show that the victim had indeed pled guilty to extortion and received judicial diversion. The trial court replied "No. No. No. No." The trial court instructed defense counsel that on cross-examination counsel could not discuss any aspect of the victim's guilty plea and judicial diversion, but that counsel could inquire about the factual circumstances underlying the victim's prosecution. We are of the opinion that the trial court erred when it did not allow Defendant to cross-examine the victim regarding the victim's guilty plea and judicial diversion. The language of Rule 608 is non-discretionary; a court "upon request must hold a hearing." Tenn. R. Evid. 608 (emphasis added). Because the trial court did not follow the proper procedure the trial court erred when it instructed defense counsel not to discuss the guilty plea and judicial diversion during cross-examination.

Ordinarily, the next step in our analysis would be to assess whether this evidentiary error is so egregious that it rises to the level of a constitutional violation. However, even when a defendant's right to effectively cross-examine a witness is violated this Court may not set aside a conviction if the constitutional error at trial is harmless beyond a reasonable doubt. State v. Howell, 868 S.W.2d 238, 252-53 (Tenn. 1993); Belser, 945 S.W.2d at 784. Assuming, arguendo, that Defendant's confrontation rights were violated by the trial court's error, we nonetheless affirm the judgment of the trial court because we conclude that the error is harmless beyond a reasonable doubt.

In order to assess the effect of an improper denial of a defendant's cross-examination right we must ask if the error is harmless beyond a reasonable doubt even if the damaging potential of the cross-examination were to be fully realized. Howell, 868 S.W.2d at 253 (citing Delaware v. Van Arsdall, 475 U.S. 673, 684-85 (1986)). Factors to be considered in making this decision include "the importance of the witness' testimony to the prosecution's case, the cumulative nature of the testimony, the presence or absence of evidence corroborating or contradicting the witness on material points, the extent of cross-examination otherwise permitted, and the overall strength of the prosecution's case." Id. (citing Van Arsdall, 475 U.S. at 684-85)).

Here, the victim's testimony was central to the prosecution's case because it was the only evidence of Defendant's crime. There were no other witnesses at trial. Nonetheless we conclude that the trial court's error is harmless beyond a reasonable doubt because the cross-examination that

was allowed regarding the victim's crimes was extensive.  Any additional damage that would have been caused by questioning the victim about the guilty plea and judicial diversion would have been negligible.  The relevant portion of the record reads as follows:

Defense: And when you took his $240, you made a deal with him, didn't you?

Victim: I don't understand you by deal.

Defense: Well, you said, there's a warrant out for you, didn't you?

Victim: Yes.

Defense: And you said, I can take care of that warrant for you; didn't you?

Victim: Yes.  Yes.

Defense: But for me to take care of that warrant for you, it's going to take $240. That's what you told him, isn't it?

Victim: Yes.

Defense: And you took his money, didn't you?

Victim: Yes, I did, yes.

Defense: You took the $240?

Victim: Yes.

Defense: Now you didn't give back that money before the FBI confronted you, did you?

Victim: No, I did not.

Defense: But you and the FBI had a little meeting; didn't you?

Victim: Yes.

Defense: And in fact, the word extortion was used, wasn't it?

Victim: Yes.

Defense: More than once, wasn't it?

Victim:     Yes.

Defense:    Now as a police officer you were completely familiar with the crime of extortion, weren't you?

Victim:     Yes, I was.

Defense:    And you admitted to the FBI that you had taken his money?

Victim:     Yes, I did.

Defense:    And you admitted that you took it, because you told him that you'd take care of the warrant for him?

Victim:     Yes, I did.

Defense:    And it was after that that (sic) you lost your job with the Knoxville Police Department, isn't it?

Victim:     Not that I–yes, I resigned.

Defense:    You resigned? Well they knew about it; didn't they?

Victim:     Excuse me?

Defense:    The Knoxville Police Department knew that you'd been stung by the FBI?

Victim:     Yes.

Defense:    And it was after they learned about this sting that your career with the Knoxville Police Department terminated, wasn't it?

Victim:     Not on their terms.

Defense:    That's not what I asked. I'm talking about timing in here. I'm talking about timing. My question to you is, it was after they learned that the FBI got you, that your career ended with the Knoxville Police Department; isn't that correct?

Victim:     I was in the process of leaving, yes.

Defense:    You going to tell this jury you had any choice in keeping that job after the FBI had stung you?

Victim:    It was a slim possibility.


In short, the jury was made aware that the victim committed a crime for financial gain, that he abused his position of trust as a police officer by committing the crime while on-duty, that he admitted his crime to the FBI, and that the crime was responsible for his immediate departure from the Knoxville Police Department. During his testimony the victim admitted his guilt to extortion. The only point of contention was whether he was fired or voluntarily quit his job as a Knoxville police officer. We think that any additional questions regarding the victim's guilty plea and judicial diversion would have caused little additional prejudice to the victim's credibility. As a result, we conclude that the trial court's failure to allow questioning about the guilty plea and judicial diversion is harmless beyond a reasonable doubt.

### III. Conclusion

For the above reasons we AFFIRM the judgment of the trial court.


_____
THOMAS T. WOODALL, JUDGE